345 So.2d 468 (1977)
STATE of Louisiana
v.
David C. FEARN.
No. 58730.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*469 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Douglas P. Moreau, Asst. Dist. Atty., for plaintiff-relator.
Stephen K. Peters, Gill, Lindsay, Seago & Beckner, Baton Rouge, for defendant-respondent.
DIXON, Justice.
By bill of information defendant David C. Fearn was charged with possession of marijuana in violation of R.S. 40:966(C). On August 24, 1976 defendant filed a motion to suppress the marijuana on the basis that it was unconstitutionally seized without a warrant. After a hearing, conducted on September 9, 1976, the trial judge granted the motion. We granted the State's application for writs to review the correctness of this ruling.
Defendant lives with his parents in Baton Rouge. His parents' property is bounded on the rear by a drainage ditch. Another ditch intersects this drainage canal at approximately a thirty degree angle. This second ditch (approximately eight feet wide) is totally on the Fearn's property and runs generally along the side property line which extends several feet beyond the ditch. On the edge of this ditch on the side nearest defendant's house he had planted twelve marijuana plants. Defendant's neighbor, Mr. Arthur Penton, observed defendant and some other boys near some strange looking plants on occasion and on July 1, 1976 called the East Baton Rouge Parish sheriff's office to report his observations. Five days later, on July 6, 1976, Deputy Pete Humble, responding to a second call by Mr. Penton, went to Mr. Penton's residence to observe the plants to determine if they were, as suspected, marijuana. Deputy Humble testified that he could not determine that the plants were marijuana until he walked closer to the ditch, although he stated that he affirmatively identified the suspect plants before he crossed the property line. Deputy Humble made a call and observed the ditch area until another deputy arrived. The deputies then went to the Fearn residence and arrested defendant. Following the arrest the officers and defendant went back yard and pulled up six marijuana plants about eight inches tall and six plants about thirty inches tall. The police testified that they could have obtained a warrant, but did not.
The question here, as in State v. Nine, 315 So.2d 667 (La.1975), is whether the defendant's justified expectation of privacy under the Fourth Amendment of the United States Constitution and under Article 1, § 5 of the Louisiana Constitution of 1974 was violated by the warrantless seizure. The record reveals that the ditch where defendant was growing the plants was entirely upon the property belonging to defendant's parents, whose property line extended beyond the far side of the ditch. Four to five foot weeds were growing in the ditch; six of the twelve plants, which were less than a foot high, were not visible except upon close inspection. The remaining plants, approximately thirty inches high, although visible among the weeds from the next door neighbor's house, were not identified by the police except from the *470 edge of defendant's property line. The ditch where the plants were located was screened from view of defendant's parents' house by a shed and a fence around a swimming pool. Defendant apparently relied on the high weeds in the ditch (he had planted the marijuana in April) and the distance to the property line to preserve the privacy of his activities. Although this expectation was not fully justified (Mr. Penton testified that he could observe the plants from some distance) it was reasonable. The area of the ditch in which the plants were cultivated apparently could not be seen from the public street. Therefore, though in fact visible, the plants were located in a position on defendant's parents' property which could be reasonably expected to assure defendant's privacy and were not openly displayed to public view.
Since the area of the ditch in which the plants were grown was an area in which defendant had a reasonable expectation of privacy, the protections of the Fourth Amendment against unreasonable searches and seizures are applicable. It is clear that a fundamental constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). See also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).
In brief the State suggested that this search was justifiable as a search incident to an arrest. However, this argument has no merit for, assuming the validity of the arrest, it is clear that the plants were not in defendant's immediate control. E. g. Coolidge v. New Hampshire, supra; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Defendant was arrested at his front door and the plants were located in the back yard, behind a swimming pool fence and some eighty feet from the front door. The officers told defendant why they were there, and required him to accompany them to the plants.
The State further relies on the "plain view" exception to the prohibition against warrantless searches. In Coolidge v. New Hampshire, supra, the United States Supreme Court set out the elements, rationale and scope of the "plain view" exception. The conditions necessary for the applicability of the exception are: (1) there must be a prior justification for an intrusion into a protected area, (2) in the course of which evidence is discovered inadvertently, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. See also State v. Meichel, 290 So.2d 878 (La.1974). Upon analysis of the circumstances of this seizure and the rationale and scope of the "plain view" exception it is evident that the first and second requisites are not met in this case.
One explanation of the "plain view" exception is that it complements, rather than subverts, the objective of the Fourth Amendment in precluding searches without warrants unless there is a well-delineated exception. Plain view justifies a seizure only when an intrusion into a protected area has already validly taken place by virtue of a warrant or another exception to the warrant requirement. If an officer has already legally entered a protected area then evidence in open view may be seized because the intrusion upon the defendant's privacy is not substantially increased, whereas the inconvenience and danger of loss would be great if seizure is prevented until a warrant could be secured.
The State argues that there was a prior valid intrusion in this case because the officer had the permission of Mr. Penton to go onto Mr. Penton's property from which the officer viewed the marijuana plants. This argument misses the point. The intrusion into the protected area, the ditch, did not take place until after defendant was arrested. The initial view of the contraband occurred before any valid intrusion into the protected area was made, and at a time when the police could have obtained a *471 warrant. Plain view alone is never enough to justify a warrantless seizure. As the United States Supreme Court noted in Coolidge:
"The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent `exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. . . ." 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584.
Hence, the plain view doctrine does not apply in this case because the exception cannot be used alone to justify a search and seizure.
The other rationale for the "plain view" exception is that it does not conflict with the other purpose of the Fourth Amendment in preventing general, exploratory searches. The Fourth Amendment recognizes that necessary searches should be as limited as possible. Thus, when a search is made pursuant to a warrant, the warrant should particularly describe the place to be searched and the persons or things to be seized. Likewise, searches made pursuant to some recognized exception have been limited in scope; a search incident to an arrest, justified by the need to protect the arresting officer and prevent destruction of evidence, is limited in scope to those areas near the suspect where he might obtain a weapon or destroy evidence. If the officers are searching pursuant to a prior valid justification for the intrusion, then evidence in open view may be seized because the individual's privacy is not infringed to any greater degree, but the inconvenience of getting a warrant to justify an inadvertent discovery is substantial. However, if officers intend to search for an item, planning to justify its seizure by the "plain view" exception, then the search will naturally expand to a "general" search. To restrict the seizure of evidence under this exception to those items "inadvertently" discovered precludes a general warrantless search, yet does not impose any "inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as `per se unreasonable' in the absence of `exigent circumstances.'" Coolidge v. New Hampshire, 403 U.S. at 470-71, 91 S.Ct. at 2040, 29 L.Ed.2d at 585-86.
Therefore, as an additional reason, the seizure of the evidence was illegal because the discovery of the marijuana plants was far from inadvertent. The officers were specifically called to inspect defendant's property to determine if the plants he was growing were, as anticipated, marijuana. The officer did not visit Mr. Penton for some other reason, and then happen to notice the marijuana. Rather, this was a planned search, and, as the Supreme Court of the United States noted in Coolidge v. New Hampshire, supra, that court has never validated planned warrantless seizures on plain view grounds. 403 U.S. at 471, n. 27, 91 S.Ct. at 2041, n. 27, 29 L.Ed.2d at 586, n. 27. Likewise, opinions rendered by this court discussing the "plain view" exception have not justified a search on this ground if the evidence was not inadvertently seen. See State v. Bourg, 332 So.2d 235 (La.1976); State v. Navarro, 312 So.2d 848 (La.1975); State v. Meichel, supra; State v. Hargiss, 288 So.2d 633 (La.1974). In fact, in Hargiss the officers had gone to the vehicle in question with the purpose of searching it for contraband and the court held that the plain view doctrine did not justify the seizure of evidence in open view on the floor of the car. (But see State v. Jones, 263 La. 164, 267 So.2d 559 (1972).
The officers testified that they could have kept the area under surveillance until they secured a warrant but that they did not. There was no exigency. Since there is *472 no recognized exception applicable to the facts of this case to justify the warrantless search and seizure, the motion to suppress was properly granted.
For the foregoing reasons the ruling of the trial judge is affirmed, and the case is remanded for further proceedings consistent with this opinion.
DENNIS, J., concurs. The trial judge apparently found the plants to have been located in a place reasonably expected to be private by the defendant. The evidence is conflicting but sufficient to support this finding, considering the discretion to be accorded the finder of facts.
SANDERS, C. J., dissents and assigns written reasons.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents.
SANDERS, Chief Justice (dissenting).
The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." The right protected is that of privacy, which has been described as "one of the unique values of our civilization." McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Hence, under well-established principles, the protection of the Constitution applies only when there is a justifiable expectation of privacy. Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Nine, La., 315 So.2d 667 (1975).
In the instant case, the defendant's land was unenclosed. The marijuana plants were growing 1½ feet east of an 8-foot-wide ditch. They ranged from 8 to 30 inches in height.
On the west, there was no fence or physical barrier between the plants and the land owned by Penton, defendant's neighbor. Penton could see the marijuana plants from his back porch. He cut the grass in the area west of the ditch, which area included some of the defendant's property. While doing so, Penton could readily observe the marijuana.
On the north, similarly, there was no fence or enclosure on the 20 to 25 feet between the defendant's northern neighbor and the plants. Thus, nothing obstructed observation of the marijuana plants from the north.
On the east, 5-foot-high bushes stood approximately 100 feet from the plants and separated the defendant's property from the eastern tract of land. Thus, anyone over five feet tall could see the plants from this direction.
On the south, the only obstruction between the row of plant's southern edge and the street was four intermittently placed trees. Without difficulty, one could position himself on the street to see that portion of the yard where the marijuana grew.
The defendant's residence was on the southeastern side of the marijuana plants. No one from the residence could see the plants, since a small shed and a fence surrounding a pool blocked the view.
I am convinced that defendant had no reasonable expectation of privacy in this unenclosed area. The marijuana plants were visible from all directions. The neighbor had access to an area only 9½ feet from the plants. Hence, defendant has no valid complaint under the Fourth Amendment. People v. Superior Court for County of Los Angeles, 37 Cal.App.3d 836, 112 Cal.Rptr. 764 (1974); Dillon v. Superior Court of Santa Barbara County, 7 Cal.3d 305, 102 Cal. Rptr. 161, 497 P.2d 505 (1972); People v. Ortega, 175 Colo. 136, 485 P.2d 894 (1971); People v. Bradley, 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129 (1969). See also, Smith v. State, Tenn.Cr.App., 519 S.W.2d 407, cert. denied (1974).
In People v. Bradley, supra, in somewhat similar circumstances, the Supreme Court of California held that a seizure of marijuana plants violated no constitutional prohibition. The court stated:
"A number of cases in upholding searches in open fields or grounds around a house have stated their conclusions in *473 terms of whether the place was a `constitutionally protected area.' (See e. g., cases cited in People v. Edwards, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713). That phrase, however, does not afford a solution to every case involving a claim of an illegal search and seizure (see Katz v. United States, 389 U.S. 347, 350-352, 88 S.Ct. 507, 19 L.Ed.2d 576), and we believe that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion (People v. Edwards, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713, and cases cited therein).
"Measured by that test we are satisfied that the officer's discovery and seizure of the marijuana plants in the yard adjacent to defendant's residence did not violate the constitutional prohibitions against unreasonable searches and seizures. From the recited evidence it may be inferred that the marijuana plants were partially but not totally covered by foliage. It does not appear that the plants were covered by nontransparent material, and it may be inferred that at least part of the plants were in plain sight of anyone within a foot of the tree. Although they were in a rear yard that was fenced to an undisclosed extent, they were located a scant 20 feet from defendant's door to which presumably delivery men and others came, and the front house, as well as defendant's house, apparently had access to the yard. Under the circumstances it does not appear that defendant exhibited a subjective expectation of privacy as to the plants. Furthermore, any such expectation would have been unreasonable. (Cf., e. g., Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; People v. Terry, 70 Cal.2d 410, 77 Cal.Rptr. 460, 454 P.2d 36; People v. Alexander, 253 Cal.App.2d 691, 700, 61 Cal.Rptr. 814; see Katz v. United States, supra, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 [concurring opinion by Harlan, J., containing statements to the effect that there is no reasonable expectation of privacy in an open field or with respect to `conversations of the open'].)"
The majority relies on the "high weeds in the ditch" as a support for the expectation of privacy. In my view, this reliance is unjustified. Growing from the bed of the ditch, these weeds extended less than one foot above the ditch bank. At least portions of the marijuana plants were visible above the weeds. In any event, I know of no constitutional doctrine that gives a person who does not cut his weeds greater rights than one who does.
For the reasons assigned, I would reverse the ruling of the district court and overrule defendant's motion to suppress the evidence.
MARCUS, Justice (dissenting).
I respectfully dissent. In every case where a violation of the fourth amendment is alleged, analysis must begin with the question of whether the fourth amendment is applicable. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court announced the principle that the fourth amendment protects people and not places. Regardless of an individual's subjective expectation of privacy, however, the protection of the fourth amendment extends only to those expectations of privacy that are constitutionally justified. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). In Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the Court held that the special protection accorded by the fourth amendment to the people in their "persons, houses, papers and effects" is not extended to open fields, notwithstanding the fact that those fields may be the property of the defendant. The decision in Hester has been cited with approval in the recent cases of Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) and United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). In Santana, the Court noted that while the porch of a dwelling as well as the yard surrounding a home may *474 be considered "private" under the common law of property, they may nonetheless in certain circumstances be considered "public" places under cases interpreting the fourth amendment. What a person knowingly exposes to the public is not a subject of fourth amendment protection. United States v. Santana, supra; Katz v. United States, supra.
The disputed evidence in this case consisted of marijuana plants growing in an open drainage ditch just inside the unfenced back yard of defendant's parents. The plants, some of which were thirty inches high, were plainly visible from the adjacent yard by defendant's neighbor and anyone the neighbor chose to invite onto his property, including the local police. In my view, the facts of this case do not warrant the conclusion that defendant had a justifiable expectation of privacy in the area where the contraband marijuana plants were growing. Accordingly, the fourth amendment is not applicable in this case.