355 So.2d 900 (1978)
STATE of Louisiana
v.
Richard W. PARKER.
No. 60602.
Supreme Court of Louisiana.
March 6, 1978.
*901 J. Michael Stefanski, Edwards, Stefanski & Barousse, Crowley, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Bernard N. Marcantel, Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
On April 5, 1977 defendant Richard W. Parker was charged by bill of information with the offense of possession of marijuana *902 with intent to distribute. Defendant's motion to suppress evidence seized from his van was denied by the trial court on August 17, 1977, and we granted certiorari to review that ruling. 351 So.2d 1208 (La.1977).
The motion to suppress was directed at a seizure of a cellophane bag of marijuana from a van parked on North Main Street in Jennings. Craig Daigle and his partner, patrolmen for the Town of Jennings, had seen the van parked (lawfully) in front of an electronics store and across the street from a lounge when they came on duty at about 10:00 p. m. March 29, 1977. The officers customarily noted the existence of automobiles on their rounds, and were not familiar with the van. At 2:36 a. m. March 30 they decided to check the van "to see if there was anyone in it, or any type of letter or anything that might show a name for possible identification." The license plate had a seven digit number. Daigle said he had been told, when trying to check such number previously, that they had not yet been "entered" in the computer, and could not be checked until the Department of Safety opened.
No other cars were parked in the area, and the lounge across the street had closed some time earlier. With his flashlight Daigle ascertained the van was unoccupied. He then began to check the dashboard, the motor console and seat. Looking through the passenger window, he saw a plastic bag protruding from under the seat, which he thought contained marijuana. The van was sparsely furnished; the only car seat was for the driver, with a "bean bag" seat on the passenger side, and no other furniture or partitions. There were only two windows, one in the door by the driver and one on the passenger side. The door on the passenger side was locked, but the driver's door was closed, but not locked.
Daigle opened the door at the driver's side, examined the package more closely, and then removed it from the van. He called for another policeman to watch the van and left for the police station at 3:19 a. m., with the marijuana. Defendant was arrested some time later when he returned to his van.
Daigle testified that he made no attempt to obtain a search warrant because of the time it would take, but "also I was under the impression that anything in plain viewI was trained to believe that anything in plain view, you know, it was subject. . . to seizure."
The trial judge sustained the seizure, holding that it "does come within the plain view exception to the prohibition against warrantless searches . . ."
Strictly speaking, "plain view" is not an exception to the requirement for search warrants. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La.1977). A warrantless seizure of material in "plain view" would be an unreasonable seizure under the Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974, unless made with probable cause and exigent circumstances, or incident to a lawful arrest while making a genuine inventory.
It may be difficult to agree on the proper interpretation and effect of the opinion in Coolidge v. New Hampshire, supra,[1] but Justice White, joined by Chief Justice Burger, clearly understood the narrow holding of the portion relevant to the case before us:
"The majority now approves warrantless searches of vehicles in motion when seized. On the other hand, warrantless, probable-cause searches of parked but movable vehicles in some situations would be valid only upon proof of exigent circumstances justifying the search. Although I am not sure, it would seem that, when police discover a parked car that they have probable cause to search, they may not immediately search but must seek a warrant. But if before the warrant arrives, the car is put in motion by its owner or others, it may be stopped and searched on the spot or elsewhere.

*903 In the case before us, Coolidge's car, parked at his house, could not be searched without a valid warrant, although if Coolidge had been arrested as he drove away from his home, immediate seizure and subsequent search of the car would have been reasonable under the Fourth Amendment." (Emphasis added). 403 U.S. at 524-25, 91 S.Ct. at 2067, 29 L.Ed.2d at 617.
In 1974 this court was faced with a warrantless seizure of marijuana which officers testified they found in "plain view" on the front floor of a car. In a unanimous opinion by the Chief Justice, we held:
"Assuming, however, that probable cause did exist at the time of the search, we find no exigent circumstances justifying a bypass of the search warrant procedure. The automobile was in police custody, and the arresting officer held the key. The officers had ample time to secure a warrant, as evidenced by the fact that they did later secure one." State v. Hargiss, 288 So.2d 633 at 636 (La.1974).
Officer Daigle was faced with no exigent circumstances. Except for the inconvenience, he could have obtained a search warrant. The object of the prohibition against warrantless searches is to place the burden of decision and the protection of the citizen upon the magistrate, not the policeman.
It is axiomatic that, absent one of the well delineated exceptions, a warrantless search or seizure is, in itself, unreasonable under the Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974. Coolidge v. New Hampshire, supra; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Lain, 347 So.2d 167 (La.1977); State v. Fearn, supra.
All too often, lawyers and courts alike attribute greater importance to the "plain view" doctrine than it deserves: it is easy to call it an "exception," but it is not an exception to the requirement that a search or seizure must be supported by a warrant issued by a magistrate upon a finding of probable cause. Plain view serves to provide a means of securing probable cause, and, absent the applicability of one of the true exceptions to the warrant requirement, nothing more. In Coolidge v. New Hampshire, supra, the United States Supreme Court enunciated this principle in the following manner:
"The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent `exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Jones v. United States, 357 U.S. 493, 497-498, 78 S.Ct. 1253, 1256-1257, 2 L.Ed.2d 1514, 1518; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663." (Emphasis by author of opinion). 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584.
We recognized this principle, at least implicitly, in State v. Fearn, supra. In that case the defendant was growing marijuana plants in a ditch located on his parents' property. A neighbor notified the police and invited them onto his property to view the contraband. From their vantage point on the neighbor's property, the police could clearly view the plants and identify them as marijuana. The police then seized the plants without first obtaining a warrant. In our review of the seizure we first set out the following conditions for the applicability of the plain view doctrine:

*904 ". . . (1) there must be a prior justification for an intrusion into a protected area, (2) in the course of which evidence is discovered inadvertently, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. See also State v. Meichel, 290 So.2d 878 (La.1974). . . ." 345 So.2d at 470.
In holding that the seizure violated the defendant's expectation of privacy, we recognized that the police had a "plain view" of the contraband from the neighbor's property, but noted that this was not controlling. Instead, we stated:
". . . The intrusion into the protected area, the ditch, did not take place until after defendant was arrested. The initial view of the contraband occurred before any valid intrusion into the protected area was made, and at a time when the police could have obtained a warrant.. . ." 345 So.2d at 470-71.
From the cases we may deduce the following. When an officer inadvertently observes evidence of a crime from a vantage point that does not intrude upon a protected area or when that protected area is entered with prior justification, there is no violation of the search warrant rule because there has been no "search." See also State v. Bourg, 332 So.2d 235 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975). This does not, however, mean that the officer may, without more, seize the evidence. If the evidence is itself within a protected area, the officer may not enter that area to effect the seizure without first obtaining a warrant, absent exigent circumstances or another exception to the warrant requirement.
In the instant case, there can be no doubt that Officer Daigel did not intrude upon the defendant's protected area by standing in the street alongside the van. We pretermit deciding and assume for the purposes of argument, that the evidence was inadvertently observed, and that it was clearly contraband. For the purposes of this decision, we may say that the officer did not conduct an unconstitutional search. The issue remains, however, whether the defendant's constitutional rights were violated when the officer entered the van and seized the evidence without a warrant.
The relation between the Fourth Amendment and automobile searches has long been a field of constitutional law evidencing considerable controversy. In the vintage case of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the United States Supreme Court first recognized the distinction:
". . . between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. at 153, 45 S.Ct. at 285, 69 L.Ed. at 551.
Other cases have, over the years, refined the original justification for the lesser protection afforded automobiles by the Fourth Amendment and, as will be discussed later, have added an additional justification. A review of some of those cases is pertinent to the issue before us.
In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), police stopped a car fitting a description given after a robbery which occurred less than an hour before. The four passengers were arrested and the car was driven to the police station. The police then thoroughly searched the car without first obtaining a search warrant. The court stated the general rule as follows:
". . . Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be *905 obtained. Hence an immediate search is constitutionally permissible." 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428.
By balancing the degree of intrusion upon the defendant's rights through the station house search (a search which would have been permissible under Carroll if it had occurred at the time the car was stopped) against the intrusion caused by immobilizing the vehicle while securing a warrant, the court held that no practical difference existed, and therefore the search was not unconstitutional.
A broad reading of Carroll and Chambers may very well have resulted in a rule that would allow warrantless searches or seizures of automobiles at any time there existed probable cause. This approach, however, was specifically rejected in Coolidge v. New Hampshire, supra. In Coolidge, the defendant's car was seized and taken to the police station after he had been arrested. The car was searched two days after it was seized. The court stated:
"The word `automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears.
. . . . .
Since Carroll would not have justified a warrantless search of the Pontiac at the time Coolidge was arrested, the later search at the station house was plainly illegal, at least so far as the automobile exception is concerned. Chambers, supra, is of no help to the State, since that case held only that, where the police may stop and search an automobile under Carroll, they may also seize it and search it later at the police station. . . . Here there was probable cause, but no exigent circumstances justified the police in proceeding without a warrant. As in Dyke, [Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967)] the later search at the station house was therefore illegal." 403 U.S. at 461, 463-64, 91 S.Ct. at 2035, 2036-37, 29 L.Ed.2d at 580, 581.
Thus Coolidge indicates that probable cause alone is not sufficient; there must be a distinct justification, such as exigent circumstances, to validate a warrantless instrusion.
A second justification for warrantless intrusions has been advanced in the so-called "inventory search" cases. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), for example, the court, cognizant of the lesser expectation of privacy associated with automobiles, held that evidence seized after an impounded automobile was entered by police for the purpose of closing its windows against the rain was admissible. The court noted that the entry was justified as a "measure taken to protect the car while it was in police custody" (390 U.S. at 236, 88 S.Ct. at 993, 19 L.Ed.2d at 1069), and once there was a lawful entry, the seizure of the evidence did not violate the defendant's constitutional rights.
The recent case of South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), further illustrates the approach developed in inventory searches. In that case the defendant's car was towed to a city impound lot for a parking violation. A policeman noticed a watch on the dashboard and other personal items on the back seat and floorboard of the car. The car was opened and the police conducted an inventory search which produced not only the personal items, but also a quantity of marijuana. The court held that the intrusion upon the protected area was justified by the superior interests served through a valid inventory search. Those interests, as outlined by the court are:
". . . the protection of the owner's property while it remains in police custody, United States v. Mitchell, 458 F.2d 960, 961 (CA 9 1972); the protection of the police against claims or disputes over lost or stolen property, United States v. Kelehar, 470 F.2d 176, 178 (CA 5 1972); and the protection of the police from potential danger, Cooper v. California, 386 U.S., at 61-62, 87 S.Ct. at 790. The practice has been viewed as essential to respond to incidents of theft or vandalism. See Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781, 782 (1971), cert. *906 denied, 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972); Warrix v. State, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned." 428 U.S. at 369, 96 S.Ct. at 3096-97, 49 L.Ed.2d at 1005.
From the foregoing cases it can be seen that the citizen's interest in the privacy of his automobile, because of the nature of the device, is less than his interest in the privacy of his home or other structure. Accordingly, the Fourth Amendment does not afford as great a degree of protection to that interest. But the automobile is not entirely without the protection of the Fourth Amendment. While there are numerous cases upholding the validity of warrantless searches and seizures of automobiles in each case there existed interests superior to those of the citizen, whether they be "exigent circumstances" or the police interest in protection through inventory. Additionally, in each case, the initial intrusion into the protected area was justified by those interests. Therefore, it is clear that probable cause alone is not sufficient to justify a warrantless search or seizure, even where the object to be searched or seized is an automobile.
In the present case, the warrantless seizure effected an intrusion upon defendant's interest in the privacy of his automobile which was not justified by any superior interests. At the time Officer Daigle entered the car, no exigent circumstances existed. The mere fact that an automobile is involved does not create exigent circumstances. Coolidge v. New Hampshire, supra. The vehicle was unattended so there was no immediate danger that the evidence would be spirited off or destroyed. Leaving the car under surveillance while a warrant could be obtained would have imposed no greater hardship on the officers, nor would it have endangered the evidence or society. The testimony at the motion to suppress hearing indicates that after Officer Daigle seized the evidence the car remained under surveillance and the defendant was arrested when he returned. Because the entry was made without a warrant and in spite of the lack of exigent circumstances or other superior interests, the defendant was denied his right to have a magistrate, unaffected by on-the-street pressures of law enforcement, determine whether probable cause to search or seize existed.
We hold that the defendant's rights under the Fourth Amendment and those afforded by Article 1, § 5 of the Louisiana Constitution of 1974 were violated by the warrantless seizure of evidence from his car. The ruling of the trial court on the motion to suppress is reversed, and the motion to suppress is sustained, and the case is remanded to the district court for further proceedings.
SANDERS, C. J., dissents with written reasons.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents.
SANDERS, Chief Justice (dissenting).
Richard W. Parker was charged with possession of Marijuana with intent to distribute, in violation of LSA-R.S. 40:966 A(1). Prior to trial, defendant filed a motion to suppress the marijuana which had been seized from his parked vehicle. After a hearing, the motion was denied by the trial judge. The majority reverses the ruling. I disagree.
The facts surrounding the seizure of the marijuana are as follows: Patrolman Craig Daigle, accompanied by Pfc. William Wood, Jr., was patrolling Main Street in Jennings, Louisiana, during the late night and early morning hours of March 30, 1977. During this patrol, he observed an unattended vehicle parked on the street in front of an electronics store and directly across the street from a lounge. The vehicle remained parked at that location for several hours. At approximately 2:36 a. m., Daigle noticed that the vehicle had not been moved and decided to make a routine check of the van.
*907 No business establishment, including the lounge, was open at that time of the morning. The van was the only vehicle parked on the street for three blocks. Daigle testified that several burglaries had been committed during the early morning hours, and routine police procedure required him to check vehicles parked near the businesses during the early morning hours. Additionally, checks were run on unattended vehicles to determine if they were stolen or abandoned. Daigle, who did not recognize the new model van, was unable to run a registration check on the vehicle because its new license had not yet been entered in the computer. Daigle testified that upon approaching the van he shined his flashlight through the window on the passenger side to see if anyone was inside. Having ascertained that the van was unoccupied, Daigle then shined the flashlight around the interior of the vehicle to determine if any document was visible identifying the owner, since a registration check of the vehicle was not possible. While doing so, he noticed on the floorboard of the van, protruding about halfway from under the driver's seat, a cellophane bag containing what appeared to be marijuana. Only after observing the substance did Daigle enter the car through the unlocked door on the driver's side. He then seized the bag containing about one pound of marijuana and returned to the police station after requesting that Sergeant James Romero watch the vehicle for the owner's return. Defendant was subsequently arrested when he returned to the vehicle.
Arguably, an individual has no expectation of privacy as to those areas of the car which are visible to passersby through the windows of the vehicle, unlike such areas as the glove compartment or the trunk shielded from visibility. If so, the Fourth Amendment of the United States Constitution does not apply.
Assuming, however, that every part of a vehicle is protected against unreasonable searches and seizures by the Fourth Amendment, nevertheless it is submitted that defendant's contention that the marijuana was unlawfully seized is without merit. It is well settled that, under certain circumstances, the police may seize evidence in plain view without a warrant. Under this rule it has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Evidence seized in plain view is not the product of a search, and its introduction into evidence does not offend the Fourth Amendment. State v. Bourg, La., 332 So.2d 235 (1976); State v. Hargiss, La., 288 So.2d 633 (1974).
In the instant case, the officer observed an unattended and unlocked vehicle parked for several hours on a public street in the Jennings business district during the early morning hours when every business on the street was closed. Routine police procedure during early morning patrols required a check of unattended vehicles in order to curtail burglaries in the city. In compliance with this procedure and in order to determine whether the vehicle might have been stolen or abandoned, the police officer attempted to ascertain the ownership of the van without entering the vehicle by looking for documents bearing the owner's name which might be visible from the outside. The officer had a right to be in the position where he was when the marijuana fell into plain view. The contraband in plain view was not the product of a search and was lawfully seized. The fact that a flashlight was used by the officer as a visual aid in examining the interior of the van to determine its ownership does not transform the officer's actions into a search. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Marshall v. United States, 422 F.2d 185 (5th Cir. 1970); Williams v. United States, 404 F.2d 493 (1968).
In my opinion, the ruling of the trial judge permitting the admission of the evidence at the trial is correct.
*908 For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
I agree with the majority that probable cause without exigent circumstances would not justify the police making a search of a parked vehicle without a warrant. However, in the instant case, I consider that the police officers had a legitimate right to be where they were when they inadvertently came across the marijuana. Therefore, the marijuana was subject to seizure under the plain view doctrine. The seizure was not unreasonable under the fourth amendment. Accordingly, I respectfully dissent.
NOTES
[1] For the difficulty of "clean" analysis of automobile search cases, see Moyland, The Automobile Exception, 27 Mercer Law Review 987 (1975-76).