359 So.2d 1239 (1977)
STATE of Louisiana
v.
Roger Dale DOUCET.
No. 59784.
Supreme Court of Louisiana.
December 19, 1977.
On Rehearing June 9, 1978.
*1240 Raymond D. Fuljenz, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Adam L. Ortego, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
The defendant in this case was convicted of an armed robbery, La. R.S. 14:64, which occurred at the Parkside Grocery in Calcasieu Parish on May 31, 1976. The State's case was based primarily on the testimony of a store attendant who selected defendant's picture after being shown two photographic line-ups by law enforcement officers investigating the crime. The testimony of the store attendant was corroborated by a revolver obtained through a warrantless search of defendant's automobile. Of the several arguments raised on appeal, the primary contention of the defendant is that the weapon should not have been admitted as evidence in the case.
*1241 The same revolver was also involved in a prior case, in which defendant was charged with an armed robbery at a 7-11 Food Store in Calcasieu Parish on June 24, 1976. In that case the defendant filed a pretrial motion to suppress. Following a hearing, the trial court on November 12, 1976 ordered the evidence suppressed after finding that it had been seized during an unlawful warrantless search of defendant's vehicle. The State on that date orally informed the court of its intention to seek supervisory writs to review its ruling. Approximately five months later, on April 4, 1977, the State filed an application in this Court for a writ of certiorari, which we initially refused to consider because it appeared to be untimely. On April 18, 1977, this Court granted the State's motion to reconsider the application and upon so doing vacated its previous ruling and decided to consider the application on its merits. After further study this Court on May 13, 1977, issued the following order: "Writ denied. We find no error in the trial court's ruling." 345 So.2d 505 (La.1977).
In the instant case, Doucet did not file a pretrial motion to suppress, but during trial he did seek to prevent the introduction of the revolver into evidence by attempting to file a motion to suppress and by objecting on the grounds that a different judge of the same district court had previously decided that the evidence was inadmissible in another prosecution involving the defendant. The trial court overruled the objection, denied defendant the right to file a motion to suppress, and admitted the weapon into evidence.
Defendant contends that the State was collaterally estopped to offer the evidence over a defense objection because the court's ruling thereon would amount to the relitigation of the unreasonable search and seizure issue which had been decided previously in another case. The contention of the State is that the court's order suppressing the evidence in the prior litigation was not a final judgment; therefore, the doctrine of collateral estoppel should not apply.
In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the federal rule of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy which is applicable to the states through the Fourteenth Amendment. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, supra, 397 U.S. at 443, 90 S.Ct. at 1194. Although first developed in civil litigation, it stands for an extremely important principle in our adversary system of justice. As Mr. Justice Holmes said in United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), "[i]t cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt." 242 U.S. at 87, 37 S.Ct. at 69. (quoted approvingly in Ashe, supra, at 397 U.S. 443, 90 S.Ct. 1189).
Moreover, the decisions have made it clear that the rule of collateral estoppel in criminal cases is "not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Ashe v. Swenson, supra, 397 U.S. at 444, 90 S.Ct. at 1194. The inquiry must be "set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948) (quoted approvingly in Ashe, supra, 397 U.S. at 444, 90 S.Ct. 1189).
Guided by these judicial principles we turn to the issue presented in this case: Is the State, under the doctrine of collateral estoppel, precluded from introducing into evidence in another trial evidence which has been declared inadmissible at a motion to suppress hearing held in connection with another charge?
This Court has recognized that the doctrine of collateral estoppel is fully applicable *1242 to a former judgment in a criminal case, State v. Jackson, 332 So.2d 755 (La.1976), and has been "elevated to the dignity of a constitutional right." State v. Cain, 324 So.2d 830 (La.1975). However, this is the first time we have been called upon to invoke it to bar the relitigation of an order to suppress evidence. Since Ashe v. Swenson, which applied the doctrine to preclude a second trial on the merits did not expressly address the issue presented here, we will consider the jurisprudence of other state and lower federal courts in deciding the res nova question.
A survey of the decisions reveals that a satisfactory answer to the question is not readily available. A number of courts have concluded that the doctrine of collateral estoppel does not require the prosecutor to abide by a former court decree suppressing evidence because it is not a "final judgment on the merits." E. g., State v. Greenwood, 565 P.2d 701 (Okl.Cr.App.1977); Cook v. State, 35 Md.App. 430, 371 A.2d 433 (1977). If these decisions attempt to follow Ashe v. Swenson, they represent a strict and mechanical interpretation of the language of that case which, in our opinion, disregards the reasons for the concept of collateral estoppel and how its formulation there by the Supreme Court was influenced by the facts of the case.
In one of the cases upon which the Supreme Court in Ashe relied in stating why the doctrine should be available in criminal cases, United States v. Kramer, 289 F.2d 909 (2d Cir. 1961), the court of appeals discussed at some length the rule's underlying policy. In part, the Court stated:
"The very nub of collateral estoppel is to extend res judicata beyond these cases where the prior judgment is a complete bar. The Government . . . may not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be." Id. at 916.
Another work which the Ashe court cited and quoted from extensively, Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1 (1960), sets forth the basic policy considerations for applying collateral estoppel in criminal cases as follows:
"Collateral estoppel in civil cases is grounded upon the belief that the burden of relitigation upon parties and upon the judicial system outweighs the possibility of injustice in perpetuating an erroneous determination in an earlier suit. Continued relitigation acts as a drain upon the finances, time, and energy of the individual party. Further, absent the finality provided by collateral estoppel, a successful litigant would not be able to rely upon a prior determination as assurance that he may continue his conduct or that he may plan his economic life free of the possibility of being forced to pay a judgment. Finally, relitigation results in waste of public funds and the valuable time of courts with already crowded dockets, and delays the opportunity of other citizens to gain initial adjudication of their claims. While the need to reach just results in legal matters is certainly a primary consideration, these results can be adequately achieved by allowing a plaintiff one full and fair hearing plus an opportunity for impartial review through appeal. A miscarriage of justice resulting from inability of counsel must in the nature of our judicial system be borne by the losing litigant; erroneous decisions uncorrected on appeal are not common enough to support a different principle.
"In the criminal law the possible waste of judicial resources seems somewhat diminished in effect. Criminal matters are less numerous than civil, prosecutors are less liekly to attempt relitigation than private persons, and the issues of fact in criminal litigations are likely to be less complex and time-consuming. However, a single criminal suit is likely to involve a greater expenditure of public funds since it involves the additional expense of prosecution. A policy forbidding reexamination of issues encourages care in the preparation *1243 and presentation of the prosecution's initial case.
"The weight of the harassment factor is considerably increased in the criminal law. Initially one recognizes the increased disparity in the resources of the parties; the government has available relatively large amounts of funds and legal manpower to utilize in successive actions. Further, a new action is a more serious matter for the defendant than in the civil context, since he may be incarcerated pending the new trial if bail cannot be obtained. Even without imprisonment awaiting trial, the strain of potential reprosecution is greatly magnified. Furthermore, one who faces a second prosecution based on a different statutory offense will certainly be deterred more easily from engaging in conduct which the court in the first prosecution has found to be lawful than one who fears only further civil litigation.
"While the harassment argument favoring a broad application of the concept of collateral estoppel thus increases in criminal law, the opposing considerationthat erroneous resolutions of litigated matters not be allowed to standis similarly buttressed. The state has a more urgent interest in securing the punishment of criminals and protecting the public from criminal acts that it has an individual compensation for a breach of contract or deterrence of such contractual infidelity. And as long as the prosecution is not permitted to appeal determinations against it, not only is the possibility of good-faith error enhanced, but the realization by the trial judge that rulings against the government are not reviewable may prejudice the administration of the criminal law. However, despite the possible detriment to the state, the retention of collateral estoppel seems necessary to safeguard the rights of defendants. The most satisfactory solution, one which would permit a compromise between the competing interests, would be to allow the state to correct erroneous acquittals on appeal." (footnotes omitted)
A careful analysis of the reasons underlying the doctrine of collateral estoppel and the Ashe decision leads to the conclusion that the doctrine forbids relitigation by the government of adverse suppression orders. In United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262 (2d Cir. 1975), cert. denied, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976), the court in making such an examination first defined the term "final judgment" as follows:
"For purposes of issue preclusion, `final judgment' includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect,' ALI, Restatement of Judgments 2d, Tent. Draft No. 1, § 41 (1973); Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 87-90 (2 Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); Zdanok v. Glidden Co., 327 F.2d 944, 955 (2 Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Factors supporting a conclusion that a decision is final for this purpose are `that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal.' Restatement, supra, § 41 at 7."
The Court next noted the due process overtones in Mr. Justice Holmes' statement on collateral estoppel in United States v. Oppenheimer, supra, mentioned the harassment factor, the disparity of resources between the state and the defendant and the strain of relitigation upon the latter discussed in Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, supra. After considering all of these factors, the Court in DiGiangiemo reasoned that the collateral effect of a judgment suppressing illegal evidence cannot reasonably depend upon whether the ruling came in the course of trial or through the more orderly procedure *1244 of a pretrial motion to suppress hearing; therefore, the Court concluded, if the elements of a final decision are present in a judgment suppressing evidence, due process would forbid relitigation of the issue by the State.
In United States ex rel. DiGiangiemo, the Court assumed without discussion that a ruling resulting from a motion to suppress hearing is a ruling upon an issue of "ultimate fact." While there are contrary opinions on this subject, the better view appears to be that a district judge's finding that evidence seized is the product of an unreasonable warrantless search constitutes a finding of "ultimate fact."[1]
We agree with the DiGiangiemo analysis. In many of our criminal cases the admissibility of evidence obtained through a search and seizure is the only seriously contested issue. It does not appear reasonable or just that the ruling on such an important question should have less dignity than factual determinations made during trial. Normally, a ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial in search and seizure cases.[2] La. C.Cr.P. art. 703. It is primarily for the sake of procedural convenience and efficiency that the defendant is required to file and try his motion to suppress before the trial. See, La. C.Cr.P. art. 703; State v. Wallace, 254 La. 477, 224 So.2d 461 (1969). For these reasons we reach a conclusion similar to the second circuit federal court of appeals. Assuming that the State has had an opportunity for a full hearing on suppression and an adequate opportunity for review,[3] due process would forbid relitigation of the issue determined adversely to it. We note also, that according to an eminent federal procedure scholar, in litigation under former Federal Rule of Criminal Procedure 41(e), the source of our own suppression statute, La. C.Cr.P. art. 703, "[i]f the motion [to suppress] is granted, the tainted evidence is not admissible at the trial of the case, nor in any subsequent trial or hearing." Moore's Federal Practice, § 41.10 (1977).
Applying these principles to the instant case we conclude that the ruling by the trial court on November 12, 1976 finding that the revolver had been seized in an unlawful warrantless search and suppressing it as evidence was a valid and final judgment for the purpose of precluding relitigation of the identical issue between the same parties.[4] The State was afforded an adequate opportunity *1245 to be heard at the hearing and to seek review by this Court, and the State took full advantage of these rights. Accordingly, the doctrine of collateral estoppel was properly invoked by the defendant, and the district court should not have admitted the evidence at trial. Since the defendant was denied a right vouchsafed by both federal and state constitutions we are required to reverse the conviction and sentence, Louisiana Code of Criminal Procedure Article 921, and remand the case to the trial court for further proceedings. It is so ordered.
SANDERS, C. J., and MARCUS, J., dissent.

ON REHEARING
DIXON, Justice.
We granted rehearing to reconsider the applicability of the doctrine of "collateral estoppel" in criminal cases. The question presented, as stated on original hearing, is whether ". . . the State, under the doctrine of collateral estoppel, [is] precluded from introducing into evidence in another trial evidence which has been declared inadmissible at a motion to suppress hearing held in connection with another charge." On original hearing we held that the State was so precluded. A rehearing was granted to reevaluate this holding.
1. Collateral Estoppel.
Discussions of the doctrine of collateral estoppel as applied to criminal prosecutions most often begin with Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the case in which the United States Supreme Court first elevated the principle to constitutional dimensions. But to understand what Ashe means it is necessary to examine a case decided earlier on similar facts by the high court, Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958).
In Hoag the defendant had been indicted for the robbery of three people in a New Jersey bar. At trial for the three robberies, Hoag presented alibi evidence and the jury returned a verdict of acquittal. Hoag was thereafter indicted for a fourth robbery arising out of the same event, that of another patron of the bar. At trial he again presented his alibi but this time the jury found him guilty. Among the arguments made by the defendant before the court was that principles of fundamental fairness required the application of the doctrine of collateral estoppel to preclude the second prosecution. The Supreme Court, after recognizing the existence and use of the doctrine in both state and federal courts, remarked:
"Despite its wide employment, we entertain grave doubts whether collateral estoppel can be regarded as a constitutional requirement. Certainly this Court has never so held." 356 U.S. at 471, 78 S.Ct. at 834, 2 L.Ed.2d at 919.
The court found it unnecessary to decide the question, however, because the New Jersey court had considered the doctrine and found it inapplicable to the facts of the case.
Twelve years later the Supreme Court was presented with a case offering virtually identical facts to those in Hoag, Ashe v. Swenson, supra. Six men, while playing poker in the home of one of their number, were robbed by three or four masked men. *1246 Ashe was soon arrested and charged with the armed robbery of each of the six poker players. Ashe was first brought to trial for the robbery of one of the six and strenuously contested the issue of identity. The jury returned a verdict of "not guilty due to insufficient evidence." Ashe was later brought to trial for the robbery of another of the victims. The state presented more refined evidence at the second trial and the defendant was found guilty.
The court first directed its attention to the decision in Hoag v. New Jersey, supra. After recognizing the similarity in facts, the court summarized its prior holding:
"Viewing the question presented solely in terms of Fourteenth Amendment due processwhether the course that New Jersey had pursued had `led to fundamental unfairness,' 356 U.S., at 467, 78 S.Ct., at 832, 2 L.Ed.2d, at 917this Court declined to reverse the judgment of conviction, because `in the circumstances shown by this record, we cannot say that petitioner's later prosecution and conviction violated due process.' 356 U.S., at 466, 78 S.Ct., at 832, 2 L.Ed.2d, at 917. The Court found it unnecessary to decide whether `collateral estoppel'the principle that bars relitigation between the same parties of issues actually determined at a previous trialis a due process requirement in a state criminal trial, since it accepted New Jersey's determination that the petitioner's previous acquittal did not in any event give rise to such an estoppel. . . ." 397 U.S. at 441-442, 90 S.Ct. at 1193, 25 L.Ed.2d at 474.
In the years between Hoag and Ashe, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), was decided, holding the Fifth Amendment protection against double jeopardy and its federal interpretation binding on the states through the operation of the Fourteenth Amendment. Benton, the court noted in Ashe, radically altered the approach to the problem:
". . . The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy. And if collateral estoppel is embodied in that guarantee, then its applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of `fundamental fairness,' but a matter of constitutional fact we must decide through an examination of the entire record. . . .
. . . . .
The ultimate question to be determined,. . . is whether this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is. For whatever else that constitutional guarantee may embrace, . . . it surely protects a man who has been acquitted from having to `run the gantlet' a second time. . . .
The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." 397 U.S. at 442-443, 445-446, 90 S.Ct. at 1193-1194, 1195, 25 L.Ed.2d at 475, 476-477.
The court held that the state could not.
In the years since Ashe was decided, the United States Supreme Court has neither shifted collateral estoppel's anchor in the Fifth Amendment double jeopardy provisions, nor reexamined the possibility of its operation through Fourteenth Amendment principles of fundamental fairness. See One Lot Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); Turner v. Arkansas, 407 U.S. 366, 92 S.Ct. *1247 2096, 32 L.Ed.2d 798 (1972); Harris v. Washington, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971).
The federal constitutional doctrine of collateral estoppel announced in Ashe v. Swenson, supra, based on the Fifth Amendment protection against double jeopardy, is not applicable to the case before us. Doucet has been placed in jeopardy only once, and only in this case, for the armed robbery of the Parkside Grocery on May 31, 1976. Doucet was also charged in another case with the armed robbery of a 7-11 Store on June 24, 1976. In the 7-11 case a motion to suppress was granted as noted in our original opinion, and we denied writs on the State's application. Doucet was later tried for the 7-11 robbery and convicted without the suppressed evidence.
Since the offenses charged happened at different times and places, no double jeopardy considerations are involved. This is not a complete answer to the problem, however, as our original opinion demonstrates.
On original hearing in the present case, we relied on United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262 (C.C.A.2 1975), cert. den. 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976), for guidance on the question of whether collateral estoppel has constitutional roots in fundamental fairness as well as in double jeopardy. In DiGiangiemo the defendant was initially indicted in one New York county for receiving and withholding stolen property and possessing a dangerous weapon. A motion to suppress evidence seized in a search was granted and the indictment was dismissed. Defendant was later brought to trial in a different county on a different charge. When the state offered evidence seized in the same search that had, in the previous prosecution, been held unconstitutional, the defendant's lawyer objected, but not on Fourth Amendment grounds. The objection was overruled and the defendant was convicted. The court of appeals, on appeal in habeas corpus proceedings, was influenced by DiGiangiemo's failure to properly object and assert the prior ruling and simply held that his constitutional rights had not been violated. But in dicta, Judge Friendly posed a hypothetical case with essential facts which parallel those of the case before this court:
". . . Defendant X is the subject of two indictments in two counties, one for bank robbery, the other for having stolen an automobile to be used as the getaway car. He pleads not guilty to both charges and notifies the state that he proposes to prove an alibi, which will exonerate him of both offenses, and for which he has strong support. The state's reliance will be on weak identification evidence and a confession to both crimes. The bank robbery charge is to be tried first. X moves to suppress the confession on a number of groundsuse of physical violence; deprivation of food, water, and rest; promises of immunity, etc. Both sides recognize that determination of the motion will very likely decide the case. After a hearing of several days, a judge suppresses the confession. The state elects not to exercise a right to appeal, drops the bank robbery indictment, and indicates its intention to press the stolen car indictment. X moves again to suppress the confession. The state insists on a hearing, saying it has new evidence to rebut X's claims. Does due process permit it to be given one?" 528 F.2d at 1265.
Judge Friendly noted that Ashe v. Swenson, supra, would not be applicable to the situation posed because Ashe rested on the double jeopardy clause and defendant X (as well as DiGiangiemo) was never placed in jeopardy on the first indictment, citing United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916); Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).
Turning to ". . . the question . . . left unanswered in Hoag, namely, how far *1248 due process, unaided by the double jeopardy clause, requires a state to apply collateral estoppel in favor of a criminal defendant. . .," the Second Circuit Court of Appeals, primarily moved by the "harassment factor . . . in the criminal law," stated that due process would forbid relitigation of the issue.
After further consideration, we now conclude that the result indicated by the DiGiangiemo dicta is not required by principles of due process and fundamental fairness.
Collateral estoppel and other preclusion devices exact a great price for judicial efficiency. By precluding relitigation the potential of harassment and inefficiency are avoided; the price is that sometimes erroneous rulings are perpetuated that frustrate, rather than advance, justice. Due process (fundamental fairness) may be afforded the accused although the application of collateral estoppel in this State is limited to those cases where it is required by Ashe v. Swenson, supra.
Among the policies most often cited as served by collateral estoppel is the prevention of harassment. See DiGiangiemo, supra; Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1 (1960). But collateral estoppel is not the only device which can avoid this danger. The trial court and this court, through the exercise of supervisory jurisdiction, have broad powers adequate to prevent prosecutorial abuse.
A more compelling reason for not recognizing the collateral estoppel doctrine in the circumstances of the present case is that such a course would be inconsistent with the design and intent of the exclusionary rule. In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court, while dealing with a problem not related to the one before us now, had occasion to discuss the rule and its purposes. After noting the various justifications supporting the rule, the court observed:
"The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights. Post-Mapp decisions have established that the rule is not a personal constitutional right. It is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any `[r]eparation comes too late.' Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965). Instead, `the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . .' United States v. Calandra, supra, 414 U.S. at 348, 94 S.Ct. at 620.
Accord, United States v. Peltier, supra, 422 U.S. at 538-539, 95 S.Ct. at 2318; Terry v. Ohio, 392 U.S. 1, 28-29, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); Linkletter v. Walker, 381 U.S. at 636-637, 85 S.Ct. at 1741; Tehan v. [United States ex rel.] Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966)." 428 U.S. at 486, 96 S.Ct. at 3048, 49 L.Ed.2d at 1083.
The exclusionary rule as it applies to the Fourth Amendment has conceptual validity only if it is applied to prevent the introduction of illegally seized evidence, for only then will it have the desired deterrent effect. A rule of collateral estoppel which would work to prevent the introduction of legally seized evidence merely because that seizure has been incorrectly decided to be unconstitutional would not accord with the purposes of exclusion and would have no relationship to fundamental fairness.
We conclude that principles of due process and fundamental fairness do not require the application of the doctrine of collateral estoppel in the present case.
2. The Motion to Suppress.
As noted in our original opinion, Doucet, apparently believing that the State was estopped by the prior ruling, failed to file a pretrial motion to suppress in this prosecution. *1249 He did, however, attempt to file the motion during trial but the trial judge denied the defendant the right to file the motion and the evidence was introduced.
C.Cr.P. 703 provides, in pertinent part:
"A. A defendant aggrieved by an unconstitutional search or seizure may move to suppress for use as evidence at the trial on the merits, any tangible objects or other property, or documents, books, papers or other writings, on the ground that they were so obtained. A motion filed under the provisions of this paragraph must be filed no later than three judicial days before trial on the merits begins, except where the defendant receives notice of trial thirty days before trial on the merits, then such motion must be filed no later than fourteen calendar days before the trial on the merits begins, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. The court in its discretion may permit the filing of such a motion to suppress at any time before or during the trial." (Emphasis added).
The reason generally advanced by those state and federal courts that follow the view that a pretrial motion to suppress is necessary is that the "trial court should not be required to stop during the course of a trial to determine a collateral issue as to the legality of the means by which the prosecution obtained its evidence." 50 A.L.R.2d 531, 585 (1956). Such a rationale does not justify denying a defendant an opportunity to assert a claim that his constitutional rights have been violated, unless it can be shown that defendant's failure to file a pretrial motion was a deliberate strategic bypass of the State procedure. It has been noted that:
". . . the experience of the federal courts indicates that there are no compelling reasons why an exception to the general rule should be made in the case of illegally obtained evidence. . . . The issues involved will ordinarily be no more time consuming or complicated than those presented to the trial court when it must rule, for example, on the admissibility of confessions, business records, or evidence claimed to be privileged, or on the qualifications of expert or other witnesses." People v. Berger, 44 Cal.2d 459, 282 P.2d 509 (1955).
Indeed, C.Cr.P. 703(B) allows a defendant who has failed to file a motion to suppress a written confession or written inculpatory statement prior to trial to object to the admissibility of the confession or statement at the trial; this procedure would require the same interruption of the trial as a consideration of a motion to suppress filed after trial has commenced.
Defendant's failure to file a pretrial motion to suppress was based on the belief that the State was precluded from introducing the evidence which was suppressed in a prior unrelated proceeding by operation of the doctrine of collateral estoppel. While we now conclude that the doctrine is inapplicable, the defendant's belief, as evidenced by this court's division on the issue, was not entirely unjustified.
Federal courts, when presented with habeas corpus applications, alleging the violation of constitutional rights, where defendants have failed to properly or timely object in the state court, will often grant relief unless the applicant had "deliberately by-passed the orderly procedure of the state courts." 31 La.L.Rev. 601 (1971), quoting from Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963). In enunciating a federal waiver standard in Fay v. Noia, supra, the Supreme Court adopted the test previously set forth in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938): "[A]n intentional relinquishment or abandonment of a known right or privilege."
No such knowing or intelligent waiver of a constitutional right was made here by the failure to file the motion to suppress prior to trial. The trial judge, in the exercise of his discretion, should have considered the *1250 circumstances which led defendant to believe there was no need to file a motion to suppress. It cannot be said that the defendant did not have the opportunity to file the motion prior to trial or that he was unaware of the grounds for the motion, C.Cr.P. 703(A); nevertheless, defendant's assumption that the State was bound by the prior trial court ruling suppressing the evidence had the same effect. Therefore, we conclude that the trial judge erred in failing to permit the defendant to file the motion to suppress during the trial.
3. The Search.
Although the trial court refused to allow the filing of a motion to suppress during trial, on the trial of the motion for a new trial, partly based on the constitutionality of the seizure, the transcript of the suppression hearing in the earlier case was introduced by stipulation. The court ruled, in denying the motion for new trial, that the evidence was not seized through an unconstitutional search because of the "plain view" doctrine.
The facts adduced at the motion to suppress hearing are as follows. Shortly before 4:00 A.M. on June 24, 1976, Darrel Burcham, a security guard for Cities Service Oil Company refinery in Calcasieu Parish and a "special deputy," was told by an employee of Cities Service that a man was lying in the trunk of a car parked on a company temporary parking lot. Burcham drove to where the car was parked and radioed the license plate number to a man in the "clock house" who in turn relayed the information to the Calcasieu Parish sheriff's department. Burcham raised the trunk lid and found the defendant lying awake inside. The defendant cooperated with Burcham, giving the guard his driver's license and car registration which he obtained from the glove compartment, explaining, according to Burcham's testimony at the hearing, that he was waiting for his father to get off work and had decided to take a nap in his trunk. The defendant testified that he was waiting for the personnel manager to arrive at work so that he could apply for a job. Burcham radioed the information via the "clock house" to the sheriff's department. The watch lieutenant for the guard service soon arrived and, having been in contact with the sheriff, told the defendant he was under arrest for armed robbery and put him in handcuffs.
Deputy Ernest Williamson of the Calcasieu Parish sheriff's department then arrived at the scene, unaware that the security guards had previously arrested the defendant for armed robbery Williamson placed the defendant under arrest for criminal mischief, in that he "was duly (sic) alarming the public by being inside the trunk of the car." With the defendant handcuffed and placed some distance from the car, Williamson went to the front of the car, leaned over the hood and shined his flashlight on the floorboard where he saw a revolver and some currency on the floor. Williamson then arrested the defendant for armed robbery and, after having the car placed under guard until a search warrant could be obtained, transported the defendant to headquarters.
Testimony at the hearing indicates that a search warrant was obtained and executed that morning, but when the defendant attempted to have the warrant introduced into evidence the State objected for reasons not disclosed by the record. The trial judge sustained the objection, announcing that the exclusion of the warrant resulted in his considering the search and seizure as warrantless.
Warrantless searches or seizures, under the meaning of the Fourth Amendment of the United States Constitution and Art. 1, § 5 of the Louisiana Constitution of 1974, are unreasonable in themselves absent the applicability of one of the well recognized exceptions. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Parker, 355 So.2d 900 (La.1978).
*1251 The State argues that the evidence was properly seized within the "plain view" doctrine. One of the conditions necessary for the "plain view" doctrine to be applicable is that the evidence must be discovered inadvertently. State v. Fearn, 345 So.2d 468 (La.1977). Deputy Williamson could hardly be said to have discovered the evidence inadvertently when he had to lean his upper body over the hood of the car and shine his flashlight to the floorboard in order to see the gun and currency. However, even assuming that the evidence was first observed inadvertently and in "plain view," the subsequent warrantless seizure was not justified because there existed no exigent circumstances. Plain view alone is not sufficient to justify the intrusion into the citizen's privacy. State v. Parker, supra. In the present case the defendant had been taken to the sheriff's office and the car had been left under guard for several hours before the evidence was seized. There were no exigent circumstances.
Neither can the search and seizure be justified as being made incident to an arrest. Warrantless searches after an arrest are justified by the need to protect the officer, but are necessarily limited to the defendant's person or the area within his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Gaut, 357 So.2d 513 (La. 1978); State v. Robinson, 342 So.2d 183 (La.1977). At the time Deputy Williamson leaned over the hood and observed the gun the defendant was handcuffed and guarded by two officers fifteen to twenty feet away; when the car was later thoroughly searched; the defendant was being held at the sheriff's office. Clearly, the search was not of an area within the defendant's immediate control.
Finally, the search cannot be justified as an "inventory" search for the protection of the defendant's interests in the property. There is nothing in the record that indicates that the car was actually impounded and it is clear that the officers searched the vehicle for the purpose of discovering incriminating evidence. Under State v. Jewell, 338 So.2d 633 (La.1976), the search cannot be justified as an inventory search.
For the above reasons, the defendant's conviction is reversed and sentence is set aside. The motion to suppress is granted and the case is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.
SANDERS, C. J., dissents and assigns reasons.
SUMMERS, J., dissents and assigns reasons.
TATE, J., concurs and assigns reasons.
MARCUS, J., dissents.
DENNIS, J., concurs in the decree and assigns reasons.
CALOGERO, J., concurs and joins in the reasons assigned by DENNIS and TATE, JJ.
SANDERS, Chief Justice (dissenting).
I agree that the doctrine of collateral estoppel is inapplicable in the present case.
I disagree, however, with the holding that in the absence of a "deliberate strategic bypass" of the pre-trial procedure, that the trial judge must entertain and hear a motion to suppress during trial. This holding is in conflict with the statute, which allows the filing of a belated motion to suppress only in two exceptional situations:
(1) When an opportunity to file the motion timely did not exist;
(2) The defendant was not aware of the grounds of the motion during the filing period fixed in the article.
Neither of these exceptions apply in the present case. Hence, the trial judge did not err in declining to consider the motion. *1252 State v. Smith, La., 283 So.2d 470 (1973); State v. Wallace, 254 La. 477, 224 So.2d 461 (1969).
On the merits of the motion to suppress, I am of the view that the seizure of the pistol and money did not result from an unconstitutional search. The officer saw the pistol and currency by shining his flashlight through the windshield. The use of artificial light to enhance observation is not objectionable. As the United States Fifth Circuit Court of Appeals stated in Marshall v. United States, 422 F.2d 185 (1970), "the plain view rule does not go into hibernation at sunset."
In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the United States Supreme Court stated:
"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."
The plain view doctrine has subsequently been reduced to a three-pronged test. An object is seizable under the doctrine if (1) the initial action resulting in the discovery of the object is lawful; (2) the discovery is inadvertent, that is, there is no advance plan to seize the weapon or other object; and (3) the object is immediately apparent evidence. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Sokolow, 450 F.2d 324 (5 Cir. 1971); United States v. Truitt, 521 F.2d 1174 (6 Cir. 1975); State v. Murray, 84 Wash.2d 527, 527 P.2d 1303 (1974) cert. denied 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); State v. Wilson, 367 A.2d 1223 (Md.App.1977).
In my opinion, the view in the instant case satisfies all three requirements. However, it can be more properly classified as an open view: a view made prior to a legal intrusion into a protected area. Upon seeing the pistol and currency, the officers had probable cause to believe that defendant had committed the armed robbery and that the pistol and currency were connected with it. Thus, the seizure of the pistol falls under the special rule applicable to motor vehicles. That rule may be stated as follows:
An officer, who is lawfully in any place, may without obtaining a search warrant seize from a motor vehicle any item which he observes in plain view or open view if he has probable cause to believe that the item is a weapon, contraband, loot, anything used in committing a crime, or other evidence of a crime. See State v. Brierly, 109 Ariz. 310, 509 P.2d 203 (1973); State v. Holmes, Fla.App., 256 So.2d 32 (1971); State v. Wrose, Mo., 463 S.W.2d 792 (1971); State v. Blevins, 22 Ohio Misc. 174, 256 N.E.2d 728 (1969); Lewis v. State, Tex.Cr. App., 439 S.W.2d 351 (1969).
In State v. Brierly, supra, an open view of a truck's bed and cab disclosed a dagger and bloody clothing. The court upheld a warrantless seizure.
In State v. Holmes, supra, the Florida court upheld an open view discovery and warrantless seizure of fruits of burglary after a motorist was stopped for a traffic violation.
In State v. Wrose, supra, the court upheld the open view discovery and warrantless seizure of pry-bar and fruits of a burglary from a vehicle parked at a curb near the scene of the crime.
In Lewis v. State, supra, the Texas court upheld an open view discovery and warrantless seizure of a pistol seen on the floorboard of a car after a driver was ordered to exit during a traffic stop.
I would uphold the seizure on this ground.
In addition, however, the officers were justified in taking custody of the pistol and currency to safeguard them. This rule is especially applicable to weapons. If left unattended, weapons can fall into the hands of children, thieves, or others who might misuse them. In Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 *1253 (1973), in upholding a warrantless search of an injured policeman's car to find and secure his service revolver, the United States Supreme Court recognized the right of law enforcement officers to impound a weapon "to protect the public from the possibility that . . . [i]t would fall into untrained or perhaps malicious hands." See also South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
Thus, the courts have upheld the protective impoundment of property, including weapons, which requires safekeeping when its owner has been injured or arrested. United States v. Lacey, 530 F.2d 821 (8 Cir. 1976); United States v. Wilson, 524 F.2d 595 (8 Cir. 1975); United States v. Lipscomb, 435 F.2d 795 (5 Cir. 1970), cert. denied 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); Fagundes v. United States, 340 F.2d 673 (1 Cir. 1965); United States v. Nash, 394 F.Supp. 1257 (D.C.Wis.1975).
Thus, the action of the officers was also justified under the property-safeguard rule.
To these well-established doctrines, I would add that, in my opinion, there can be no reasonable expectation of privacy in those parts of an automobile exposed to public view through the windows or windshield when the automobile is parked in a public place.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
Rehearing was granted to review the Court's ruling applying the doctrine of collateral estoppel to the facts of this case.
In this reconsideration of the case, it is apparent that a threshold issue concerning the timeliness of a motion to suppress is critical to a decision of this appeal.
By two separate indictments defendant was charged with armed robberies on May 31, 1976 and June 24, 1976, both allegedly involving the same gun. After the robbery of June 24, 1976 defendant was arrested the next morning while asleep in the trunk of his car at a parking lot on the property of the Cities Service Refinery near Lake Charles. A .38 caliber pistol, cartridges, holster and currency were found in his car and seized by the arresting officers.
On the defendant's motion to suppress these objects as evidence, the trial judge held a hearing in the June 24, 1976 case and granted the motion on November 12, 1976. A notice of intention to apply for writs was then orally announced by the State with the understanding that the time for applying would be fixed at a later date. After some delay March 31, 1977 was fixed as the date before which application for review should be filed. Application was timely filed and review was denied on May 13, 1977.
In the meantime defendant was brought to trial on the May 31, 1976 offense. Trial of this matter commenced on January 12, 1977 with the swearing of the first juror. On January 13, 1977 defendant presented a motion to suppress tangible evidence, including a revolver alleged in the motion to have been obtained during a search made pursuant to an invalid, illegal and unconstitutional search warrant. Illegality of the warrant was asserted because the information in the affidavit in support of its issuance was supplied through the search and seizure by guards at the Cities Service Refinery in Calcasieu Parish, the identical search and seizure which was the object of the motion to suppress in the June 24, 1976 armed robbery.
Article 703A of the Code of Criminal Procedure requires that a motion to suppress be filed no later than three judicial days before trial, except where defendant receives notice of trial thirty days before trial on the merits, in which event the motion must be filed no later than fourteen days before trial, unless opportunity therefor did not exist or defendant was not aware of the grounds for the motion.
In support of the delay defense counsel argued that no opportunity existed for filing the motion timely because the revolver *1254 had been suppressed previously in another case on November 12, 1976. Relying on that ruling the defense felt that the State would not attempt to use the suppressed evidence in another trial. According to the defense, the only reason the gun was still in the prosecutor's possession was because the validity of the suppression was then in question before the State Supreme Court, the prosecution having filed for certiorari.
In rebuttal the prosecutor confirmed that the suppression ruling was pending before the Supreme Court on application for certiorari. It was argued also that the suppression hearing did not involve the robbery then before the court but was based upon another robbery, at another time and at a different place. Moreover, the State contended it had no notice that the motion to suppress would be filed and was not prepared, its witnesses necessary for a suppression hearing not being present. Further, it was noted, postponement of the trial, already commenced, was impracticable. For these reasons the State urged the trial judge to apply the provision of Article 703A and deny the untimely filing of the defense motion to suppress.
Finding that the State was seeking review of the previous suppression ruling and that the ruling was not final, that it was evident the grounds for the motion were well-known to defendant and his counsel long prior to the trial date, and that the defense had failed to show that there was no opportunity to file such a motion, the trial judge, applying Article 703A, denied defendant the right to file the untimely motion. However, he did permit inclusion of the motion in the record in support of defendant's assignment of error based upon an objection to the court's ruling.
The trial proceeded, the gun was admitted into evidence over defense objection, and the defendant was found guilty on January 13, 1977. Then, on February 25, 1977 a defense motion for a new trial was filed. Therein it was alleged that error occurred when the trial judge ruled that the motion to suppress was untimely. Admitting the gun into evidence which had been suppressed in another case was also alleged as error. Failure to call an alibi witness and incompetence of counsel were other grounds alleged for a new trial.
At the hearing on the motion for a new trial it was stipulated that the evidence adduced at the suppression hearing at the former trial would be considered as the evidence in support of the motion for a new trial. After considering the record of the suppression hearing, the trial judge agreed with the findings of fact of the trial judge who granted the motion to suppress in the former case. These facts disclosed that at 3:30 on the morning of June 24, 1976 defendant was found in the trunk of his automobile by security guards at a temporary parking lot of the Cities Service Refinery. Upon request of the security guard he got out, identified himself and produced his vehicle registration papers from the glove compartment of his automobile, verifying thereby his ownership of the automobile. The security guard, through the company's tower operator, contacted the sheriff's department, and upon furnishing the license number of defendant's vehicle learned that defendant was wanted for questioning in connection with an armed robbery. When a security guard lieutenant arrived he placed defendant under arrest for armed robbery and trespass. Shortly thereafter two deputy sheriffs arrived, one of them arresting defendant for criminal mischief. During this time defendant was handcuffed and standing a short distance behind his car.
About this time one of the deputies walked to the front of the car leaned over the hood and directed his flashlight through the front windshield onto the floor of the car. In the light he saw currency and a blue steel revolver in a holster on the floor. He called a security guard's attention to the objects, at the same time advising defendant that he was under arrest for armed robbery.
Meanwhile other deputies had obtained a search warrant on the basis of information *1255 available to them. The gun and currency were then seized. The search warrant was never introduced in evidence.
Testimony of the officers was disputed by defendant. He testified at the hearing that one of them had taken the car keys from him and opened the car door, shining his flashlight on the floorboard where he saw the pistol and money. However, both judges who relied upon the same record accepted the officers' version of what transpired. The gun seized was the same which was suppressed as evidence in the June 24, 1976 case based upon the identical facts.
On the basis of these findings the trial judge was of the opinion that the plain view doctrine was applicable to the facts. In his view there was no search, only the discovery of evidence in plain view as that doctrine was understood and applied in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Navarro, 312 So.2d 848 (La.1975); State v. Bourg, 332 So.2d 235 (La.1976); State v. Jones, 263 La. 164, 267 So.2d 559 (1972); and Rippy v. United States, 322 A.2d 276 (D.C.App.1974). On this authority the trial judge denied the motion for a new trial, saying there was no merit to the motion to suppress. In doing so he reasoned that the doctrine of collateral estoppel was inapplicable to this case, at the time of the trial and at the time of his ruling on the motion for a new trial, because no final judgment had been rendered on the former motion to suppress. The State having notified the trial judge and the defendant of its intention to apply for writs of certiorari, a ruling was forthcoming from the Supreme Court, but not yet rendered, leaving the trial judge free to consider the question on the merits as presented in the case before him.
Although not urged on this appeal, the allegation that an alibi witness had been discovered since the trial was found to be without merit. The claim of incompetency of counsel was based upon the failure to timely file the motion to suppress and the other issues relating to the use of the gun in evidence. Since, in my view, the failure to timely file the motion to suppress amounted to a waiver of objections to the gun's admissibility, these claims of error are without merit. The claim that defense counsel was otherwise incompetent is without merit. The trial judge found that he conducted the defense in a creditable and competent manner. A review of the record supports this finding.
In addition, the trial judge concluded there was ample evidence to sustain the jury's verdict without regard to the gun which was introduced in evidence. He was of the opinion that the jury was not influenced to any great extent by the introduction of the gun in evidence and no prejudice to the defendant resulted. He noted that the principal issue at the trial was the identification of defendant, and that the young lady who was robbed clearly identified defendant at a photographic line-up and in the courtroom.
Accordingly, the trial judge denied the motion for a new trial, and the defendant was thereafter sentenced to serve fifteen years imprisonment at hard labor.
There was no abuse of discretion in the ruling that the motion to suppress presented for filing during the trial was not timely. The time for filing the motion is explicitly stated in Article 703A. By its express terms, Article 703A requires compliance with these time limitations, "unless opportunity therefore did not exist or defendant was not aware of the grounds for the motion." Only under these latter conditions is the court given discretion "to permit the filing of such a motion to suppress at any time before or during trial." State v. Hammler, 312 So.2d 306 (La.1975); State v. Smith, 283 So.2d 470 (La.1973); State v. Wallace, 254 La. 477, 224 So.2d 461 (1969).
From the facts of record and the finding of the trial judge that the motion to suppress in the former case was not yet final, that the grounds for the motion were well-known to defendant and his counsel long prior to the trial date, and that the defense *1256 had failed to show that there was no opportunity to file such a motion, the trial judge was without authority to permit the filing except in accordance with the limitations prescribed by Article 703A.
In some respects the same is true of the ruling on the motion for a new trial. The trial judge was not bound by the doctrine of collateral estoppel. He was at liberty to consider the merits of the motion to suppress. The ruling in the former case granting the motion to suppress was not final. And, as set forth by the trial judge, in addition to the fact that he found the motion to suppress to be without merit, admitting the gun into evidence played no significant part in the jury's determination of defendant's guilt. La.Code Crim.Pro. art. 921. He therefore found that the merits of the motion to suppress created no injustice and the ends of justice would not be served by the granting of a new trial. La.Code Crim.Pro. arts. 850-51.
The foregoing determination answers all claims of trial error save the contention that error was committed when the State witness, the victim of the robbery, referred to defendant's arrest when she was asked if she was shown photographs of anyone with reference to this crime. The statement was unresponsive to the question and referred to the defendant's arrest in the case on trial. Following this she testified that after the robbery she was shown pictures of people who were suspects in other cases. She did not recognize any of these as the robber in the case at bar but in a later photographic line-up she picked the defendant as her assailant. When defense counsel objected, the objection was overruled.
This testimony, the defense argues, conveys the impression to the jury that defendant may have been implicated in a prior arrest or in other crimes. In either instance, it is said, a rule of evidence is violated, reference to arrests being impermissible under Section 495 of Title 15 of the Revised Statutes, and reference to other crimes being reprobated by the decision in State v. Prieur, 277 So.2d 134 (La.1973).
The trial judge did not view the testimony in the light attributed to it by the defense, nor do I.
I would uphold the rulings of the trial judge. They are based upon a common-sense and realistic application of the law, not the highly technical and unreasonable view expressed by the majority.
TATE, Justice (concurring).
While I remain unconvinced that our original opinion was incorrect in applying collateral estoppel, I concur in the reversal, fully agreeing (a) that the trial court erred in not permitting the filing of the motion to suppress during the trial, and (b) that the search was in fact constitutionally invalid, as this court had previously held in rejecting the state's application for supervisory relief in the other criminal prosecution against the defendant.
DENNIS, Justice, concurring.
I adhere to the views expressed in the original opinion and therefore concur in the decree only.
NOTES
[1] Laughlin v. United States, 120 U.S.App.D.C. 93, 344 F.2d 187 (1965) defined ultimate facts as "those which the law makes the occasion for imposing its sanctions." Id., 120 U.S.App.D.C. at 97, 344 F.2d at 191. (quoting from The Evergreens v. Nunan, 141 F.2d 927, 928 (2d Cir. 1944), cert. denied 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944). See, Note, 80 Yale L.J. 1229, 1241 et seq. (1971); F. James, Civil Procedure, §§ 11.18-21, pp. 575-84 (1965). Contra, People v. Price, 69 Mich.App. 363, 244 N.W.2d 363 (1976); People v. Kernanen, 178 Colo. 234, 497 P.2d 8 (1972). For a discussion of ultimate facts as opposed to evidentiary or mediate facts, see, The Evergreens v. Nunan, supra; United States v. Kramer, 289 F.2d 909 (2d Cir. 1961); Comment, Recent DevelopmentsConstitutional LawDouble Jeopardy, 69 Mich.L. Rev. 762, 772-4 (1971); Note, 21 Rutgers L.Rev. 274, 278-81 (1967).
[2] See, McRae v. United States, 137 U.S.App. D.C. 80, 420 F.2d 1283 (1969).
[3] According to a majority of this Court in State v. James, 329 So.2d 713 (La.1976), the Louisiana Constitution of 1974 prohibits the legislature from providing the State with an appeal of right in criminal cases, except those in which a law or ordinance has been declared unconstitutional. Therefore, where the State desires review of a final preconviction adverse judgment or ruling in a criminal case, application to this Court for a writ of review under our supervisory jurisdiction is now the proper procedure to follow. This applies to judgments or rulings on motions to quash, pleas of time limitations, pleas of double jeopardy, motions in arrest of judgment, motions to change venue and motions to recuse formerly appealable under La. C.Cr.P. art. 912(B). Even before the James case, the legislature considered that our supervisory jurisdiction offered an adequate opportunity for review of suppression rulings adverse to the state. See, La. C.Cr.P. art. 703, Official Comment (g).
[4] The State contends that the November 12, 1976 ruling was rendered "impermanent" by its notice to the trial court that it intended to apply for writs. This argument is without merit. Mere notice to the district judge of a litigant's intention to apply for writs does not operate as a stay of the proceedings. Roumain v. Moody, 225 La. 187, 72 So.2d 473 (1954); McMahon, Work of the Supreme Court: Civil Procedure, 15 La.L.Rev. 376, 394-8 (1955). Moreover, in the absence of a timely application for supervisory review staying such ruling, it would have become final as of the date of its rendition insofar as the State is concerned. See, e. g., State v. Bullock, 263 La. 946, 269 So.2d 824 (1972); cf. State v. Mallet, 284 So.2d 761 (La. 1973). Moreover, in the case before us it would be most inequitable to allow the State to stay the effect of the prior adjudication for several months by its inordinate and unexplained delay (five months) in perfecting its writ application.