983 So.2d 124 (2008)
STATE of Louisiana
v.
Sherman WILDER.
No. 07-KA-960.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Churita Hansel, Assistant District Attorneys, Twenty-Fourth Judicial District Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
*125 Martin E. Regan, Jr., Thomas M. Calogero, Karla M. Baker, Regan & Associates, P.L.C., New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The defendant, Sherman Wilder, entered a guilty plea to possession of cocaine pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He now seeks review of the denial of his Motion to Suppress. For the reasons that follow, we affirm his conviction.
FACTS:
At the Motion to Suppress, Gretna police officer, Wayne Williams, testified that he and his partner stopped defendant's vehicle for operating the vehicle on a public street with defective license plate illumination. Williams explained that as he approached defendant's vehicle, "I could see into the passenger compartment. And as I did that I observed the [d]river appear to be shoving something underneath . . . where if you lift it you could see the gear shift." After ordering defendant to exit and wait in the presence of Officer Williams' partner at the rear of the vehicle, Officer Williams conducted a search of the "center console" of the vehicle: "underneath there was a plastic baggie with rocks in it." Officer Williams testified that his purpose in searching the console was to find firearms "because it's a really common compartment where weapons have been stored." The rocks tested positive for the presence of cocaine. Officer Williams then identified defendant as the driver of the vehicle.
On cross-examination, Officer Williams agreed that the window tint on defendant's vehicle is "very dark," but he was able to see in because the window was "partially down," "eight to ten inches," giving him an "unobstructed view of the console." Officer Williams then agreed that he removed defendant from the vehicle because "his hand . . . was near the console."
LAW AND DISCUSSION:
Defendant argues that the trial court erred in denying his Motion to Suppress the Evidence because the vehicle was searched without a warrant and no exception to the warrant requirement was present. Specifically, defendant argues that he had already been removed from the vehicle and had no access to it when it was searched, and therefore he was not a danger to officer safety. The State responds that the Motion to Suppress was properly denied because the search was lawful under several exceptions to the warrant requirement.
The Fourth Amendment to the United States Constitution and Louisiana Constitution art. I, § 5, protect individuals from unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Gagnon, 01-1302 (La.App. 4 Cir. 4/10/02), 817 So.2d 167. A search conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement. State v. Triche, 03-149 (La. App. 5 Cir. 5/28/03), 848 So.2d 80, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625, citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). In a hearing on a Motion to Suppress evidence seized without a warrant, the State bears the burden of proving that such an exception to the warrant requirement applies. LSA-C.Cr.P. art. 703(D). A trial court's denial of a Motion to Suppress is afforded great weight, and it will not be set aside unless *126 the preponderance of the evidence clearly favors suppression. Gagnon, supra.
Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), recognized the investigatory stop as an exception to the warrant requirement. Under LSC.Cr.P. art. 215.1(A), a law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense, and may demand of him his name, address, and an explanation of his actions. Law enforcement officers are authorized to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. LSA-C.Cr.P. art. 215.1 Reasonable suspicion is something less than probable cause to arrest, and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. State v. Chauvin, 06-362 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, citing State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965.
A police officer must be able to articulate specific facts upon which his suspicion is based. Id., citing State v. Burciaga, 05-357 (La.App. 5 Cir. 2/27/06), 924 So.2d 1125, 1129. Whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference is determined under the facts and circumstances of each case. State v. Sam, 05-88 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, writ denied, 05-2100 (La.3/10/06), 925 So.2d 510. "In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Chauvin, 06-362 at p. 8, 945 So.2d at 758 (quoting Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883).
In this case, the State presented evidence that police observed defendant driving with defective license plate illumination on a public street, in violation of LSA-R.S. 32:304(C), an offense under the Highway Regulatory Act. A traffic violation is a valid basis for an investigatory stop. State v. Joseph, 04-1240 (La.App. 5 Cir. 4/26/05), 901 So.2d 590, writ denied, 05-1700 (La.2/3/06), 922 So.2d 1176. In State v. Purvis, 96-787 (La.App. 3 Cir. 12/11/96), 684 So.2d 567, the Third Circuit held that a "technical violation, however slight, of La. R.S. 32:304(C)" justifies the stop of a motor vehicle. Thus, we find that defendant was lawfully stopped.
Under LSA-C.Cr.P. art. 215.1(B), when a law enforcement officer questions a person pursuant to a Terry stop and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon, and if he suspects that the person possesses a dangerous weapon, he may search the person. In State v. Carver, this Court stated that the United States Supreme Court had recognized that "roadside encounters between police and suspects are especially hazardous," and had expanded the scope of a Terry frisk to include:
the search of the passenger compartment of an automobile limited to those areas in which a weapon may be placed or hidden . . . if the police officer possesses a reasonable belief on specific and articulable facts which, taken together with the rational inferences from those facts [,] reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.
State v. Carver, 531 So.2d 551, 553 (La. App. 5 Cir.1988) (per curiam), quoting *127 Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983).
In Carver, the police observed the defendant in a high crime area within a parked car "hunched over in the seat . . . working on something . . . he kept looking up and looking around." Carver, 531 So.2d at 552. The defendant heard the officer open his car door, "because he turned and spotted [the officer], at which time he bent over and he had his hands like he was putting something under the seat." Id. This Court ruled that the defendant's "furtive gesture when observing the officer heightened the officer's suspicion, and according to the jurisprudence supported a reasonable belief that the situation could be dangerous justifying the subsequent search for a possible weapon." Carver, 531 So.2d at 553.
In State v. Archie, 477 So.2d 864, 865-66 (La.App. 4 Cir.1985), the Fourth Circuit upheld the search of the defendant's vehicle, noting that police "were not obliged to let [the defendant] reenter the car without checking to see what he had placed under the seat considering the real possibility that they might be in danger." The police had stopped the defendant's vehicle in a high crime area after observing that his license plate was "bent in such a way as to make it's [sic] numbers unreadable." Archie, 477 So.2d at 865. When police requested that the defendant exit the vehicle, he "made a sudden erratic movement, ducking down and appearing to be concealing something under the seat." Id. The Fourth Circuit ruled that the defendant's "exaggerated motion as if to place something under the seat could easily lead a reasonably prudent man to believe that his safety or the safety of others was in danger and justified the search." Id.
In State v. Davis, 612 So.2d 256, 258 (La.App. 4 Cir.1992), the Fourth Circuit again upheld the search of the defendant's vehicle, noting that the trial court "considered that the search was unlawful because the defendant was already out of the car and thus the gun was not within the reach of the defendant." The Davis court ruled that Archie applied to its facts and that the search for weapons in the defendant's vehicle was permissible despite the defendant being away from the vehicle and waiting in the presence of a second officer. Id. The police had "observed a car speeding" and "shined a light into the [speeding] car and observed the driver . . . make a motion like he was putting something under the seat." Davis, 612 So.2d at 257. The Fourth Circuit found the officers could "search under the seat for [sic] to see if there was a gun." Davis, 612 So.2d at 259.
In the case at bar, the State presented evidence that defendant was stopped for a traffic violation in a high crime area and was observed, after being stopped, concealing something within a type of compartment in which police officers tend to find secreted weapons. Officer Williams testified that his purpose was to uncover any firearms therein. The State has therefore presented evidence that the officers' protective search of defendant's vehicle was reasonable under Long.
Since the cocaine was seized after being observed by Officer Williams while he conducted his protective search of defendant's automobile, the officers were justified in seizing the cocaine without a warrant.
Defendant in his brief cites generally to State v. Doucet, 359 So.2d 1239 (La.1977) and State v. Zito, 406 So.2d 167 (La.1981) as support for the proposition that police are not entitled to search his vehicle without a warrant when he has been removed from the vehicle. The Doucet court, in reversing the defendant's conviction, noted that "the defendant was handcuffed and *128 guarded by two officers fifteen to twenty feet away; when the car was later thoroughly searched, the defendant was being held at the sheriffs office." Doucet, 359 So.2d at 1251. The Zito court, also in reversing the defendant's conviction, noted that "[the defendant] and her boyfriend were handcuffed and in separate police cars at the time of the search." Zito, 406 So.2d at 168. Both cases are therefore distinguishable from the case at bar on the basis that the defendants therein were restrained physically by police whereas defendant in this case was at liberty. The Doucet court, furthermore, reversed the defendant's conviction because the warrantless search of his vehicle did not adhere to the requirements of the plain view exception, which at the time of the decision required that evidence be discovered inadvertently during exigent circumstances. Id. In Zito, moreover, the case was not resolved under Terry, but rather whether officers had conducted a lawful search incident to arrest in performing a protective search of the arrestee's vehicle. Zito, 406 So.2d at 168.
Accordingly, we find the State has borne its burden of proving that exceptions to the warrant requirement exist in this case. Given these facts and the great weight afforded the trial court's denial of a Motion to Suppress, we find no error in the trial court's ruling.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975). This review reveals no errors patent in this case.
CONCLUSION:
For the foregoing reasons, the defendant's conviction is affirmed.
CONVICTION AFFIRMED.